# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

IRMA FIELDS,
PLAINTIFF

VS.

COMMISSIONER OF
SOCIAL SECURITY,
DEFENDANT

CASE NO. 1:08CV00827
(BARRETT, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Social Security Disability and Supplemental Security Income in April, 2005. Her application was denied, both initially and upon reconsideration. She then requested and obtained a hearing before an Administrative Law Judge (ALJ) in March, 2008. The hearing was broadcast from Dayton, Ohio, where Plaintiff was, to Oak Brook, Illinois, where the ALJ was located. Plaintiff, who was represented by counsel at the hearing, testified as did Vocational Expert, Brian Womer. The ALJ made an unfavorable decision, also in March, 2008. Plaintiff processed an appeal to the Appeals Council, which refused review in October, 2008. Plaintiff then sought judicial review by filing her Complaint in November, 2008.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred by "finding Plaintiff capable of performing other jobs, because the hypothetical he provided to the VE did not reflect those limitations supported by the record." The second error asserted is that "the ALJ improperly relied on the testimony of the Vocational Expert regarding jobs Plaintiff could perform."

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she was born in November, 1954 and lives in a two-story home in Middletown, Ohio with her her sister's family. She is divorced, five feet tall and weighs 146 lbs. She is a licensed driver, but drives only to and from her doctor's office, is right-handed and a special education graduate. She can read, do simple arithmetic, but can't make change. She gets food stamps. Her last employment was at Burger King as a cook, a job she held for a five-year period. Prior empoyment was at Comfort Inn as a maid and at McDonalds as a cook.

Plaintiff testified that she has a number of physical problems, the first of which was breathing difficulties, suffered at the rate of four to five times per day. She said "It feels like a ton of bricks on my chest." She uses an inhaler once per day. Walking and climbing stairs makes her breathing condition worse as does temperature extremes.

Plaintiff also testified about having diabetes, for which she takes Glucophage three times per day. Surprisingly, she does not routinely check her blood sugar because she doesn't have testing supplies. She also testified about joint pain in her feet and left elbow. She said the foot pain occurs daily, lasts for about an hour and is rated as a "nine" on a ten-point scale. The foot pain occurs while lying down, not sitting.. She described the elbow pain as occurring "quite a few times" per day, lasting for about an hour and is rated as a "seven" on a ten-point scale. Aspirin is taken for pain and it helps "sometimes."

Plaintiff testified that she is depressed "quite a few times" per day, and as a result, has a decreased appetite for food and tends to isolate herself. She also feels "nervous,"a condition brought on by crowds and noise. She attributed inability to follow instructions and/or work faster to depression. Twice while at work, she suffered episodes of "lightheadedness" and had to go to a hospital.

Plaintiff also mentioned a thyroid problem. She smokes one pack of cigarettes per day against medical advice. Plaintiff opined that she could stand/walk for "a couple of hours" and lift about ten pounds. Her ability to sit is unaffected. She is able to take care of her personal hygiene, read, take six-seven hour naps and take care of her small dog. She does not visit with neighbors, attend church, watch television, take walks, cook or clean. (Tr. 279-292).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ asked the VE to assume: (1) a residual functional capacity for unskilled medium work, (2) no climbing of ladders, ropes or scaffolds, (3) occasional climbing of stairs or ramps, (4) occasional balancing, stooping, kneeling, crouching or crawling, (5) no concentrated exposure to pulmonary irritants or exposure to hazards, (6) a calm work setting with no production demands, and (7) limited interpersonal coworker and supervisor contacts. The VE testified that there would be jobs of laundry worker and machine packager, both of which would exist in representative numbers in the regional economy.

The second hypothetical contained all the conditions of the first, except the jobs would be limited to the light exertional level. The ALJ responded that the number of jobs available would double from 3,000 to 6,000 and that samples would include the jobs of assembly machine tender and injection-molding machine tender.

Cross-examination of the VE produced the following: (1) a person would be expected to learn an unskilled job within 30 days and if significantly more time was needed, the person probably would be unable to keep the job. (2) A person who would miss more than 1 day per month would probably be unable to keep the job. (3) Learning the job would consist of demonstration and observation plus verbal instruction. (4) The job of laundry worker would involve moderate, not concentrated, heat and humidity levels. (5) None of the jobs identified could be performed in a "dust-free" environment, but none involve concentrated exposure to dust either. (Tr. 292-299).

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff's impairments included borderline intellectual functioning, chronic obstructive lung disease, anxiety, obesity and diabetes mellitus. The ALJ found all of Plaintiff's impairments to be severe. The ALJ found that none of Plaintiff's impairments met any Listing, either alone or in combination, and that Plaintiff had the residual functional capacity to perform unskilled medium work that involved no climbing ladders, ropes or scaffolds or

3

exposure to pulmonary irritants.

## THE MEDICAL RECORD

Plaintiff was evaluated in June, 2004 by Jennifer O'Donnell, Psy. D., a clinical psychologist. Plaintiff told Dr. O'Donnell that she was having memory and anxiety problems and had been sleeping on the couch at her sister's home for 3 years and working part-time at Burger King. Plaintiff also reported that she was divorced and had chronic arm pain. She reported being depressed, irritable and having an energy deficit. She attempted suicide after her marriage failed, but has never received any psychiatric treatment, She smokes between 1 and 2 packs of cigarettes per day. Testing showed a Verbal IQ of 71, but a Performance IQ of 89. Her Full Scale IQ was 77. Dr. O'Donnell assigned a GAF of 61 and rendered a diagnosis of Depressive Disorder and Borderline Intellectual Functioning.

Dr. O'Donnell's opinion was that Plaintiff "would be able to relate sufficiently to co-workers and supervisors for simple, repetitive tasks, which do not require complicated or detained verbal instructions and procedures." Her ability to understand, remember and follow instructions is moderately impaired. Her ability to maintain attention, concentration and persistence is slightly impaired. Her ability to withstand stress is moderately impaired. She would need a payee to manage her money. (Tr. 138-145).

Christopher Wright, M.D. conducted a physical examination of Plaintiff in July, 2004. Her primary complaint was left elbow pain, resulting from a fall suffered in 2000 and surgery to correct a pinched nerve in 2001. Dr. Wright considered Plaintiff "obese," although she weighed 153 lbs. and was 5' tall. Range of motion and muscle strength was "well preserved." Although Plaintiff complained of shortness of breath," breath sounds were clear, there was no wheezing and she was not dyspneic with exertion." Dr. Wright's conclusion was that there is "no disability secondary to the patient's underlying mental status." (Tr. 148-149). Discontinue smoking and lose weight were Dr. Wright's recommendations.

Plaintiff's primary care physician is Aleda Johnson, M.D., although on occasion she saw Pushpa Shah, M.D., a physician in the same practice in Middletown, Ohio. She received

4

treatment for anxiety and depression as well as for diabetes, chronic obstructive pulmonary disease (COPD) and hyperthyroidism from March, 2004 to November, 2007. (Tr. 158-189). Advair and Spiriva was prescribed for COPD, Effexor and Lexapro for depression and anxiety and Metformin for diabetes. Dr. Johnson stated that Plaintiff's ability to stand/walk and sit were unaffected, but that she should not lift more than 25 lbs. Dr. Johnson opined that Plaintiff was unemployable for 9-11 months due to her anxiety level, not any physical functional limitation. (Tr. 191-193; 234-259).

An additional psychological evaluation was made in August, 2005 by John Heideman, Psy. D., a clinical psychologist. Dr. Heideman diagnosed her with nicotine dependence and caffeine induced anxiety and sleep disorder. Because Plaintiff's father as well as a number of her brothers are or were alcoholics, Dr. Heideman felt that "she may have inherited some addictibility." as evidenced by her abuse of caffeine and cigarettes. Dr. Heideman felt that Plaintiff's ability to relate to others was unimpaired; her ability to maintain attention, concentration and persistence was "not appreciably impaired." Her ability to withstand job stress was "mildly impaired," but her ability to understand, remember and follow directions was "moderately to markedly impaired" by her marginal Verbal IQ. Dr. Heideman agreed with Dr. O'Donnell's assessment that Plaintiff would need a payee to help her manage any granted benefits. (Tr. 195-202).

A second medical evaluation was obtained in August, 2005 from C. Herbert Schapera, M.D. Dr. Schapera reported that Plaintiff's complained about trouble breathing and being nervous and irritable. She reported smoking two packs of cigarettes per day. Dr. Schapera indicated that he detected "a few short wheezes," but she was not dyspneic with exertion. Dr. Schapera recommended that she discontinue smoking and commented that she would do best in a dust-free environment. Muscle strength and range of motion studies were normal across the board. (Tr. 203-209).

Bonnie Katz, Ph.D. undertook a paper review in August, 2005. Dr. Katz's diagnosis was Disthymic Disorder and Anxiety-Related Disorder. Dr. Katz rated Plaintiff's difficulty performing the activities of daily living as "moderate," a limitation she also imposed with reference to Plaintiff's difficulty maintaining social function and maintaining concentration,

5

persistence or pace. Dr. Katz felt that Plaintiff could "perform simple and routine tasks in a calm consistent setting without fast-paced production demands and limited interpersonal demands." Todd E. Finnerty, Psy. D., agreed. (Tr. 210-227).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done,

6

or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321 (6th Cir. 1978); *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *see Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but

7

must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R.

8

§§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3)and 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4)and 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1520a(c).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so

9

that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Both Statement of Error are dependent upon the inaccuracy of the ALJ's hypothetical question to the VE. The residual functional capacity assessment formulated by the ALJ described Plaintiff as able to perform the exertional requirements of medium work, but unable to climb ladders, ropes or scaffolds. She should avoid exposure to pulmonary irritants and workplace hazards, and would do best in a calm work setting with no production demands and with limited interpersonal contacts. She could occasionally balance, kneel, stoop, crouch and crawl.

Plaintiff's argument is that the residual functional capacity assessment was deficient in three ways. First, Plaintiff argues that she lacked the intellectual capacity to learn a new job in a 30-day period , especially when part of the orientation was a reliance upon verbal instruction. Second, Plaintiff argues that she would be absent more than once per month, the limit tolerated by employers according to the VE's testimony. Third, none of the jobs

identified were to be performed in a dust-free environment. We do not believe than any of these arguments has merit.

It is true that Plaintiff's Verbal IQ was determined to be 71 as determined by the Weschler Adult Intelligence Scale (WAIS-III), an individually administered intelligence test. While it is also true that Dr. O'Donnell considered this score to be of borderline range, she also opined that Plaintiff had the mental ability to perform simple repetitive tasks which do not require detailed verbal instructions. It is also true that Plaintiff's high school degree was the product of a special education program, but she had a work history of employment in fast food restaurants for at least three years. Dr. Heideman rated her ability to understand, remember and follow instructions as "moderately to markedly impaired." The paper reviewers, Drs. Katz and Finnerty, opined that Plaintiff's ability to understand, remember and follow detailed instructions was markedly limited, but her ability to understand, remember and follow short and simple instructions was "moderately limited." Both paper reviewers felt that Plaintiff could perform simple routine work in a calm and consistent setting with limited interpersonal demands and no production requirements. She had a history of employment in the fast food industry and possessed a valid drivers license.

Nobody would deny that Plaintiff has intellectual limitations. Substantial evidence dictates that Plaintiff be limited to simple and routine work. Both Dr. O'Donnell and the two paper reviewers stressed this point. However, the ALJ's hypothetical restricted Plaintiff to unskilled work. Unskilled work is defined at 20 C.F.R, § 404.1568 as work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. A person can usually learn to do the job in 30 days and very little preparation and judgment are needed. While it may have been the better practice to phrase the hypothetical question as the experts have done, the ALJ's restriction to unskilled work is the functional equivalent of simple and routine work. We find that Plaintiff does have the intellectual capacity to perform simple and routine work as she did for years at Burger King.

The second argument is that Plaintiff's unreliability would cause her to miss more than one day per month and therefore render her unemployable. Dr. O'Donnell did not address the issue of reliability. Dr. Heideman described Plaintiff as "marginally reliable and

11

retainable." Drs. Katz and Finnerty rated Plaintiff's ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances as "moderately limited." Plaintiff's reliance upon Dr. Johnson's opinion that she was "unemployable" is misplaced. Dr. Johnson, an internist, was referring to a period between 9 and 11 months following July, 2004 when Plaintiff was experiencing anxiety over the loss of her brother. In summary, there is an absence of substantial evidence that Plaintiff would miss more than one day per month were she to be employed.

The third and last argument has its basis in Dr. Schapera's statement that Plaintiff "would obviously do best in a dust-free environment." While Plaintiff told Dr. Scapera that she had asthma and had trouble breathing, but she did not awaken from shortness of breath, the physical examination showed :a few scattered wheezes, but no rales or rhonchi and she was not dyspneic with exertion. Plaintiff admitted to smoking two packs of cigarettes per day. From that evidentiary base, Dr. Johnson opined that Plaintiff had COPD and said that she would do best in a dust-free environment. The VE testified that he didn't know of any environment that would be classified as "dust free," but that the jobs located would avoid concentrated exposure to dust. To be fair, the VE could not identify any jobs that would be minimally dusty.

We believe the ALJ reasonably accommodated Plaintiff's lung condition by his residual functional capacity assessment and resulting hypothetical question that Plaintiff avoid concentrated exposure to dust. Dr. Schapera did not restrict Plaintiff to a dust-free environment; he merely stated that Plaintiff would do best in a dust-free environment, an observation that would most likely be true of both the writer and the readers of this opinion. If levels of dust were to be problematic, there are masks readily available to employees as minimal costs. We do not interpret Dr. Schapera's comment as requiring that Plaintiff work only in a bubble.

For the reasons stated above, we find the ALJ's residual functional capacity assessment and hypothetical question to be fair descriptions of Plaintiff's functional limitations. We find, therefore, that the ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be AFFIRMED and this case be dismissed from the docket of the this Court.

January 12, 2010

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\HOGANTS\fields.wpd